781 So.2d 673 (2001)
STATE of Louisiana, Appellee,
v.
Ronald Earl WILLIAMS, Appellant.
No. 34,369-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
*675 Wilson Rambo, Louisiana Appellate Project, Monroe, LA, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Brian King, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
GASKINS, J.
The defendant, Robert Earl Williams, was convicted as charged of armed robbery with the use of a firearm. He was then adjudicated a second felony offender. The defendant was sentenced to serve 60 years at hard labor, without benefit of parole, probation, or suspension of sentence, plus an additional mandatory consecutive term of five years at hard labor, without benefit of parole, probation, or suspension of sentence, because the offense was committed with a firearm. La. R.S. 14:64; 14:64.3. The sentence was ordered to be served consecutively with another sentence for armed robbery with a firearm, imposed on the same day as the present sentence.[1] On appeal, the defendant *676 challenges his conviction and his multiple offender adjudication. He also argues that the sentence is excessive. For the following reasons, we affirm the conviction and sentence.

FACTS
The defendant was convicted of robbing Tony Greer while armed with a pistol. Mr. Greer is the owner-operator of a car repair shop in Shreveport, Louisiana. On November 15, 1999, at approximately 7:30 p.m., he was in front of his establishment putting water into the radiator of his personal car. He had closed his business for the day. Although it was dark, Mr. Greer described the area as well-lit. Joanna Anderson drove up and parked her car. She dated a friend of Mr. Greer, and Mr. Greer worked on their cars from time to time. She exited her car, went up to Mr. Greer, and began a discussion with him. According to Mr. Greer, the discussion was about a problem with her car. Ms. Anderson said that they were discussing her boyfriend.
While they were talking, someone walked up behind Mr. Greer, placed a gun to his head, and demanded money. When Mr. Greer turned around, he was confronted by a man whom he identified at trial as the defendant. Mr. Greer noticed another man nearby who was also armed. Mr. Greer described the defendant as the taller of the twoabout 6' 1" or 6' 2". He estimated that the accomplice was about 5' 9".
The defendant demanded money. When Mr. Greer asked "What money?" the defendant pointed a semi-automatic chrome nickle-plated pistol at Mr. Greer and threatened: "If youI'm going to shoot you. I'll burn you," and repeated his demand for money. Mr. Greer did not know the defendant and, to the best of his knowledge, he had never seen the defendant before that evening. In response to the defendant's second demand, Mr. Greer removed approximately $85.00 from his shirt pocket and gave the money to the defendant. The defendant then demanded Mr. Greer's wallet, which he surrendered. The wallet contained about $1,300.00. Mr. Greer had this large amount of cash in his wallet because he had just closed his business for the day. In response to the defendant's demand for more money, Mr. Greer disclosed there was a money bag in the car trunk. The defendant obtained the car keys and the accomplice opened the trunk. They took the money bag which contained about $40.00. The defendant and his accomplice then departed. As the defendant began to leave, he attempted to grab a chain from Mr. Greer's neck. Mr. Greer estimated the robbery lasted about 15 to 20 minutes.
Ms. Anderson confirmed the height difference between the robbers who were both armed with pistols. According to her, the taller one was armed with a silver pistol and had a long, freshly done curl in his hair. In response to her pleas, the robbers allowed her to leave and she hid behind another vehicle near the street until the robbery was completed.
A crime scene investigation failed to secure any identifiable prints from the trunk of Mr. Greer's car. Mr. Greer's money, money bag, and wallet were never recovered.
Based upon an anonymous tip that the defendant was one of the robbers, the defendant's photograph was included in a photo lineup. On November 23, 1999, the photo lineup was shown to Mr. Greer. According to Detective Rod Johnson, Mr. Greer immediately picked the defendant's photo as the main perpetrator. On December *677 7, 1999, Ms. Anderson was shown the same lineup. According to Detective Johnson, she picked the defendant's photo, but she was a little bit slower in doing so.
The defendant was already under arrest for another offense. He was placed under arrest for the present offense. The defendant was charged by bill of information with armed robbery committed with a firearm and proceeded to trial before a judge alone on March 21, 2000. The defendant was found guilty as charged.

Procedural History
On March 23, 2000, a multiple offender bill of information was filed charging the defendant with being a second felony offender. The defendant had previously entered a guilty plea to possession of a Schedule II controlled dangerous substance (cocaine) and had been sentenced to serve eighteen months. A hearing was held on the multiple offender charge on April 20, 2000. The defendant was adjudicated a second felony offender. The defendant appeared before the court for sentencing on April 25, 2000. He was ordered to serve 60 years at hard labor without benefit of parole, probation or suspension of sentence, plus a consecutive sentence of five years at hard labor without benefit of parole, probation, or suspension of sentence for using a firearm in the armed robbery. The sentence was ordered to be served consecutively with an unrelated sentence for armed robbery with a firearm in No. 34,370-KA pronounced the same day. A motion to reconsider sentence was filed, alleging that the sentence was excessive and that, because the defendant was only 20 years old and had a limited education, he was unable to appreciate the criminality of his conduct. The minutes reflect that the motion was denied by the trial court on July 13, 2000. The defendant appealed his conviction and sentence, arguing that there was insufficient evidence to convict him, that the court erred in adjudicating him a second felony offender, that the court imposed an excessive sentence, and that the court failed to adequately comply with the requirements of La.C.Cr.P. art. 894.1 in imposing his sentence.[2]

SUFFICIENCY OF THE EVIDENCE
On appeal, the defendant attacks his conviction, arguing that there was insufficient evidence to support the verdict of guilty of armed robbery with a firearm. The defendant does not deny that the armed robbery occurred. Rather, he argues that there was not sufficient evidence to identify him as the assailant. This argument is without merit.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. *678 Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La. App.2d Cir.4/2/97, 691 So.2d 347), writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
In cases involving a defendant's claim that he was not the person who committed the crime, under Jackson v. Virginia, supra, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La. App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1090 (La.12/6/96), 684 So.2d 925. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. The trier of fact has great discretion in assessing the credibility of witnesses. State v. Ervin, 32-430 (La. App. 2 Cir.9/22/99), 747 So.2d 109, writ denied, XXXX-XXXX (La.4/20/00), 769 So.2d 342. Absent internal contradictions or irreconcilable conflict with the physical evidence, the testimony of an eyewitness that he or she observed all the elements of the offense, coupled with the identification of the defendant as the culprit, is generally sufficient to support a conviction. State v. Ervin, supra.
Armed robbery is defined in La. R.S.14:64 as follows:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

Discussion
The defendant argues that the state did not carry its burden of proving that the defendant was the person who committed the armed robbery of Mr. Greer. He contends that Mr. Greer and Ms. Anderson gave inconsistent testimony regarding what they were discussing prior to the robbery. He also points out that Ms. Anderson was not able to positively identify the defendant at trial as the assailant. The defendant further notes that both Mr. Greer and Ms. Anderson testified about a blue Lincoln seen in the area just prior to the robbery. According to Ms. Anderson, the car passed by again just after the robbery, with the assailants in the back seat. The defendant notes that there was no physical evidence to connect him with this offense. He contends that "the only evidence was the testimony of Tony Greer" which he claims contained numerous inconsistencies. The defendant's arguments are not supported by the record.
Mr. Greer testified at trial that he was approached by two men, armed with guns, demanding money. The taller of the two men was the one in charge. Mr. Greer quickly and unequivocally identified the defendant as the tall assailant from a photo line-up several days after the robbery. Mr. Greer also stated at trial that he was absolutely positive that the defendant was the one who robbed him at gunpoint.
Ms. Anderson also stated that the robbery was committed by two men, with the taller of the two being the one in charge. She identified the defendant as the main assailant from a photo line-up approximately one month after the robbery. She was not able to positively identify the defendant at trial because he had significantly changed his hairstyle. She testified that after the offense, she saw the two *679 assailants riding in the back seat of a blue Lincoln.
Detective Rod Johnson of the Shreveport Police Department testified that he investigated the offense. He got a description of the assailants from Mr. Greer and Ms. Anderson. He then got a tip that "Murk," the defendant's street name, committed the robbery. The tip contained specific information about the gun and the amount of money taken. A photo line-up was assembled and was shown to Mr. Greer, who quickly identified the defendant as the offender, with no hesitation. Detective Johnson stated that Ms. Anderson also identified the defendant from the line-up. Although she was slower to do so, Detective Johnson noted that she viewed the line-up almost one month after the robbery.
Mr. Greer's firm and certain testimony under direct and cross examination leaves no doubt that the defendant as the main perpetrator who robbed him on November 15, 1999. For about 15 to 20 minutes Mr. Greer's attention was narrowly focused on the defendant. Such a narrow focus was strongly encouraged by having a pistol pointed at him. His trial testimony is buttressed by his identification of the defendant at a photo lineup. Even though Mr. Greer had never seen the defendant before that evening, he was able to immediately pick out the defendant in a photo lineup several days after the robbery. Rather than being inconsistent, as contended by the defendant, Mr. Greer's testimony was unequivocal. That Mr. Greer and Ms. Anderson differed over the subject of their conversation prior to the robbery was a minor discrepancy that had no bearing on the issue of the identification of the assailant. They did not differ over the facts concerning the robbery.
Ms. Anderson's generalized description of the defendant and his accomplice tracked Mr. Greer's. Moreover, Ms. Anderson did not exclude the defendant, but she simply said the defendant looked like one of the robbers. Further, Ms. Anderson's testimony does not omit the conclusion that she saw the defendant in the blue Lincoln after the robbery, rather than some unknown person. Under the facts of this case, a rational trier of fact could have found beyond a reasonable doubt that the evidence, viewed in the light most favorable to the prosecution, established that the defendant committed an armed robbery of Mr. Greer and that the defendant employed a firearm in the commission of the robbery.

HABITUAL OFFENDER ADJUDICATION
The defendant argues that the record does not contain sufficient evidence to support his adjudication as a second felony offender. Specifically, the defendant claims that exhibits filed into evidence by the state at the multiple offender hearing are not included in the record. Therefore, he argues that the record does not demonstrate that he was fully advised of his rights and that he knowingly and voluntarily waived those rights before pleading guilty to the predicate offense. These arguments are without merit.
The bill of information and the minutes from the defendant's guilty plea are included in the record on appeal. Further, the minutes demonstrate that the defendant's plea of guilty to possession of a Schedule II controlled dangerous substance was, in fact, knowing and voluntary. However, the issue of whether the guilty plea to the predicate offense was knowing or voluntary is not properly before this court for review.
Regarding habitual offender hearings, La. R.S. 15:529.1(D)(1)(b) provides in pertinent part:

*680 Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. [Emphasis added.]
At the habitual offender adjudication, the state offered into evidence an authenticated copy of a bill of information charging the defendant with one count of wrongful possession of cocaine in violation of La. R.S. 40:967(C). The court minute entry reflects that on October 12, 1998, the defendant appeared in court with his counsel, withdrew his former plea, and pled guilty to the charge. The minute entry also reflects that "The judge informed the defendant of his constitutional rights as per Boykin v. Alabama." At trial, the defendant registered an objection to the admissibility of the bill of information, claiming the document was not properly authenticated. The objection was overruled. The defendant did not allege an infringement of his rights or irregularity with respect to the predicate offense guilty plea. The state established that the predicate offense was a counseled guilty plea. Since the defendant did not offer evidence of an infringement of his rights or other irregularity concerning the guilty plea, no further evidence was required. State v. Shelton, 621 So.2d 769 (La.1993); State v. Jackson, 31,433 (La.App.2d Cir.1/20/99), 726 So.2d 1061, writ denied, 99-2250 (La.12/17/99), 751 So.2d 876; La. R.S. 15:529.1(D)(1). Therefore, the defendant may not now attack his adjudication and sentence as a second felony offender. The evidence presented was sufficient to support the defendant's adjudication as a second felony offender. Through the use of the bill of information, the court minutes and the expert testimony matching the defendant's fingerprints to those on the bill of information for the predicate offense, the state established that the defendant was a second felony offender.

EXCESSIVE SENTENCE
The defendant contends that the sentence imposed is excessive. He further maintains that the trial court erred in failing to comply with the requirements of La.C.Cr.P. art. 894.1 in imposing the sentence. These arguments are without merit.
The test imposed by the reviewing court in determining the excessiveness of sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance *681 with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2 Cir. 1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979; State v. Jones, 33-111 (La.App. 2 Cir.3/1/00), 754 So.2d 392.
A sentence which falls within the statutory limits may be excessive under certain circumstances. To constitute an excessive sentence, the court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and therefore, is nothing more than the needless imposition of pain and suffering. State v. Guzman, 99-1528, 99-1753 (La.5/16/2000), 769 So.2d 1158. The trial judge has broad discretion and a reviewing court may not set sentences aside absent a manifest abuse of discretion.
The defendant argues that the trial court failed to consider the factors in La.C.Cr.P. art. 894.1 in imposing sentence. According to the defendant, the trial court failed to adequately consider that his prior felony conviction was for a nonviolent offense. He also urges that, because he was only 20 years old, his youth and lack of education impaired his ability to appreciate the criminality of his conduct. At sentencing, the trial judge noted:
Mr. Williams was convicted of two counts of armed robbery. Has other files pending. These armed robberies occurred out of separate events.... The defendant has several other files pending, which indicates to the Court that he is a serious danger to the community and that he would commit crimes if he was allowed on the street with a lighter sentence than what the Court would impose with connection with this matter.
The trial court did consider the guidelines found in La.C.Cr.P. art. 894.1. Those considerations, along with the facts found in the transcripts of the trial and the habitual offender hearing, provide an adequate basis for the sentence.
Further, we do not find that the sentence imposed was excessive. Under the habitual offender adjudication, the defendant faced a minimum sentence of 49½ years and a maximum sentence of 198 years without benefit of parole, probation or suspension of sentence. The trial judge imposed a sentence of 60 years at hard labor without benefit of parole, probation or suspension of sentence. Since a firearm was used in the commission of the robbery, there was a mandatory addition of five years to be served consecutively and without benefit of parole, probation or suspension of sentence. La. R.S. 14:64.3. The sentence was ordered to be served consecutively with a sentence for an unrelated conviction for armed robbery with a firearm. The defendant was sentenced only to 10½ years above the minimum.
The defendant displayed a propensity for violence accompanied by a disregard for human life. When one considers that the defendant robbed and shot another victim the day before Mr. Greer was robbed, the real danger the defendant *682 posed to Mr. Greer becomes apparent. The defendant was prepared to kill if he met resistance in his quest to rob his victims. Under these circumstances, the sentence imposed is tailored to the offender and the offense and does not shock the sense of justice or constitute a needless or purposeless imposition of pain and suffering. Therefore, the sentence is not excessive and is affirmed.

ERROR PATENT
The record fails to show that the defendant was adequately advised of the prescriptive period for seeking post-conviction relief as required by La.C.Cr.P. art. 930.8(C).[3] Although the minute entry for April 25, 2000 provides: "The court informed the defendant of his right to appeal and of his right to post-conviction relief," the minute entry does not reflect that the defendant was advised of the applicable prescriptive period. No such advice is reflected in the sentencing transcript.
This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for re-sentencing. The district court is instructed to send appropriate written notice to the defendant within 30 days of the rendition of its opinion and to file proof of the defendant's receipt of such notice in the record of the proceedings.

CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Robert Earl Williams.
AFFIRMED.
NOTES
[1] This same day, we render an opinion addressing the defendant's conviction and sentence for an unrelated offense of armed robbery with a firearm in No. 34,370-KA. While the cases were tried on the merits separately, the habitual offender adjudications and sentencings were combined for both cases. Although we originally consolidated these cases on appeal, we choose to render separate opinions for purposes of clarity. See State v. Williams, 34, 370 (La.App.2d Cir.2/28/01), 781 So.2d 682.
[2] In his assignments of error, the defendant also complains that at the multiple offender hearing, the trial court erred in allowing into evidence the bill of information for the defendant's predicate felony offense. However, the defendant has not briefed or argued this assignment in his brief. It is therefore considered to be abandoned. URCA 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978).
[3] No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, except in certain enumerated circumstances. La.C.Cr.P. art. 930.8.