320 So.2d 892 (1975)
STATE of Louisiana
v.
Paul Charles WEATHERS, a/k/a Sammy R. Allen.
No. 56221.
Supreme Court of Louisiana.
October 1, 1975.
*893 Jude Thaddeus Fanguy, Houma, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., William G. Yates, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
A bill of information charged that on January 4, 1974 Paul Charles Weathers, while armed with a .22 caliber revolver, robbed one Tranqueline Sterns, a clerk of the Phil-A-Sac Store in Houma, Terrebonne Parish. La.R.S. 14:64. After trial by jury on February 21, 1975 Weathers was found guilty as charged and sentenced to serve 99 years at hard labor.
On this appeal Weathers assigns four errors.

Error No. 1
Prior to trial defendant filed a motion to suppress as evidence a .22 caliber pistol, a red sweater, and approximately $90 on the ground that these objects were obtained by an unconstitutional search and seizure. According to defendant's allegations, these items were illegally obtained from his vehicle without a search warrant and without probable cause. After a hearing, the motion to suppress was denied, and defendant objected and assigned the ruling as error.
At the hearing on the motions, it was shown that at about 7:30 o'clock on the morning of January 5, 1974, Officer Null of the Houma police noticed on the dispatcher's desk at headquarters a description of a suspect wanted for robbery of the Phil-A-Sack store the night before. The description fit Weathers, who Null had handled before in connection with other violations. As he was leaving, he told the dispatcher, "the man you probably want for that, and you can tell your detectives, is Paul Weathers." Weathers had not then been arrested.
Later, at 9:15 that morning, while driving west on East Main Street in the police car with Officer Shephard, Null heard a police broadcast that a suspect was wanted for the armed robbery of a Shop-Rite Food Store several minutes earlier. The broadcast description informed them that the suspect was a "white male, curly hair, approximately 5' 7", red sweater, black pants, black shoes." Both officers realized immediately that the description fit Weathers because of their prior dealings with him. They therefore headed towards Weathers' residence to question him. Before they could reach the site, however, they observed Weathers driving by on East Main Street also, away from the general direction of the Shop-Rite Food Store which had just been robbed seven blocks away. They immediately pursued and stopped Weathers.
When Weathers got out of the car, the officers observed that he was wearing black pants and shoes. A red sweater was lying on the front seat. Protruding from under the driver's seat on the floor board, the officers noticed a .22 caliber gun.
Officer Null testified that he recognized Weathers as he drove by, and when they pursued him and got a closer look he confirmed the identification. He had dealings with Weathers a "coupla days" previously. In addition this same description had been broadcast for more than a month in connection with a vandalism case. Both Null and Shephard had previously learned that the description applied to Weathers. Two days before January 5, they had captured Weathers and charged him with reckless and hit and run driving. They knew he was out of a job, that he needed money to pay fines and a lawyer, and that he would probably commit robberies.
It is the defense contention that at the time Weathers was stopped he was not acting *894 suspiciously or violating any law. Under these circumstances, it is argued, the prior dealings the officers had with Weathers and the police broadcast of his description did not give the officers sufficient knowledge to establish probable cause for the investigatory stop; and for this reason the ensuing search and seizure were illegal. State v. Saia, 302 So.2d 869 (La. 1974) is cited to support the defense contention.
As we understand the standard to be applied in such cases, something less than probable cause, that may be termed "reasonable cause", is a prerequisite to making a forcible stop to investigate a crime which will not be violative of the rights secured by the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
It is, then, a question of the sufficiency of the knowledge the officers had of suspicious facts and circumstances to permit an infringement on the suspect's right to be free from governmental interference. State v. Saia, supra. Cf. La. Code Crim.Proc. art. 215.1, Louisiana's "Stop and Frisk" statute.
No hard and fast rule can be formulated for the resolution of these cases. It is, as always, a test of reasonableness which both Federal and State Constitutions make clear. U.S.Const. 4th Amend.; La.Const. art. 1, ¶ 7 (1921). For these reasons we have made a detailed reference to the facts and circumstances upon which the officers relied to justify their stopping Weathers to investigate. In our view these facts and circumstances furnish the requisite knowledge to give them reasonable cause for their actions. This assignment of error has no merit.

Error No. 2
Defendant argues that he was prejudiced when the sweater, pants and gun were identified by the officers in open court in front of the jury but were never introduced into evidence.
The only defense objection to this evidence, made in the form of a motion to suppress during trial, outside the presence of the jury, was that it was stamped as evidence in a previous trial. This fact, the defense argues, would indicate to the jury that defendant was a bad man because the evidence had been used against him in another criminal trial.
Aside from the fact that these markings were not called to the attention of the jury, the trial judge did not feel that the markings would necessarily indicate to the jury that the objects had been used in evidence against the defendant in another trial. Further, there was nothing to indicate that the prior trial resulted in a conviction of the defendant. Accordingly, the trial judge overruled the objection. This issue is not urged in their appeal.
When the State questioned the officers and had them identify the objects, but did not offer them into evidence, defendant did not object. At the end of the trial, however, he requested a special charge that the jury be instructed not to consider these items, as they had not been introduced into evidence. Accordingly, a charge was formulated and approved by the trial judge, the State's attorney and counsel for the defense. The charge given instructed the jury to disregard the pistol, pants and sweater, and not to consider these objects as evidence in their deliberation.
For the first time in this Court on appeal the defendant contends that the prejudice caused by the production of these items in court could not be rectified by a charge to the jury.
To properly present this issue it was necessary that defense counsel object at the time the objects were referred to in the testimony of the witnesses. La.Code Crim.Proc. art. 841. A later agreement, in *895 which defense counsel took part, to instruct the jury to disregard these controversial objects had the further effect of waiving any objection to the procedure. State v. McCurady, 286 So.2d 638 (La. 1973).

Error Nos. 3 & 4
These assignments relate to the defense objection to the denial of his motion for a directed verdict on the ground that if the sweater, pants and gun referred to in the discussion of Error No. 2 had been excluded, the testimony of the victim alone was insufficient to prove that defendant committed the robbery.
A contention that the evidence is insufficient to prove the guilt of the accused presents nothing for review by this Court. State v. Douglas, 278 So.2d 485 (La. 1973). Only an allegation that there was no evidence at all to prove a certain essential element of the crime will permit this Court to review the facts. State v. Collins, 306 So.2d 662 (La.1975).
By a review of the pleadings and proceedings (La.Code Crim.Proc. art. 920[2]), according to the minutes of court, it appears that the sentence is defective. In pertinent part, it prescribes:
"Whereupon, after having had his say, said accused was sentenced to suffer imprisonment at the Louisiana State Penitentiary, Department of Corrections, Angola, Louisiana, for a period of ninetynine (99) years without benefit of probation, parole, commutation, and or diminution of sentence during good behavior as provided by law."
Deprivation of commutation of sentence is not an authorized penalty for armed robbery. To deprive a convicted party of the right to a commutation of his sentence is, moreover, an infringement upon a constitutional prerogative of the Governor. La.Const. art. 5, ¶ 10 (1921); State v. Ramsey, 292 So.2d 708 (La. 1974). This part of the sentence must be corrected. La.Code Crim.Proc. art. 882.
For the reasons assigned, the conviction is affirmed, and the case is remanded to the trial court for proper sentencing.